## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| *JONATHAN GOULD, on behalf of ST.* ) <br> *LOUIS – KANSAS CITY CARPENTERS'* ) <br> *REGIONAL COUNCIL* ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> *ALBERT BOND,* ) <br> ) <br> Defendant. ) <br> ) <br> Serve at: ) <br> 902 Zimmerman Trails Ct. ) <br> Fenton, MO 63026 ) <br> ) <br> **Return Summons to Undersigned** ) <br> **Counsel for Service by Special Process** ) <br> **Server** ) | Case No.: 4:19-cv-925 <br> **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

COMES NOW, Plaintiff Jonathan Gould ("Mr. Gould"), on behalf of the St. Louis-Kansas City Carpenters' Regional Council ("CRC"), and for his Verified Complaint against Defendant Albert Bond ("Mr. Bond"), states:

## PRELIMINARY STATEMENT

Mr. Gould brings this action derivatively on behalf of CRC for breaches of fiduciary duties under 29 U.S.C. § 501.

As Executive Secretary Treasurer ("EST") of the CRC, and previously as Assistant Executive Secretary Treasurer ("Assistant EST"), Mr. Bond owed the CRC fiduciary duties under 29 U.S.C. § 501(a). Mr. Bond violated his fiduciary duties through (1) personal misappropriation of CRC funds, (2) reviewing and approving various categories of excessive and

unlawful reimbursements for CRC members' expenditures, and (3) failing to take remedial action for similar, systemic acts of misconduct perpetrated by multiple CRC officers and agents. Mr. Bond's breaches have permitted a culture wrought with fraudulent misappropriation to go undeterred and have cost the CRC hundreds of thousands of dollars—if not millions—in lost funds.

Mr. Gould is a present dues paying member of the CRC and was formerly a CRC Business Agent.  He became aware of these violations and reported his concerns to CRC representatives, including Mr. Bond.   No action was taken.  Mr. Gould's outspoken disapproval of certain conduct ultimately led to his termination as a CRC Business Agent.  As a result, Mr. Gould filed a lawsuit in Missouri state court alleging wrongful termination, defamation, injurious falsehood, and intentional infliction of emotional distress.  Extensive discovery in that case confirmed Mr. Gould's allegations of fraudulent misappropriation and Mr. Bond's breaches of his fiduciary duties. Mr. Gould sought to bring these 501 claims in the state court proceedings, but leave to do so was denied. The only plausible reason for the denial was an alleged failure to make a formal demand for an accounting (or other appropriate relief) on the CRC's officers. Although Mr. Gould believed then (and now) that such a demand was futile, he proceeded to make a formal demand. The response to the demand was grossly inadequate and proved futility.

Under 29 U.S.C. § 501(b), Mr. Gould repeatedly demanded Mr. Bond secure an accounting and recover damages on behalf of the CRC.  After months of delay and a sham accounting, the CRC recouped only $539.00.  Further demand by Mr. Gould is futile. For the reasons discussed in Mr. Gould's Motion for Leave to File Verified Complaint, good cause exists for the filing of this Complaint.

11335249.1

## PARTIES

1.      Mr. Gould is a citizen of the state of Illinois, with his primary address at 7357 Providence Drive, Edwardsville, Illinois 62025.

2.      At all times relevant, Mr. Gould was a member in good standing of the CRC.

3.      Mr. Bond is a resident of Missouri, with his primary address at 902 Zimmerman Trails Court, Fenton, Missouri 63026.

4.      At all times relevant, Mr. Bond was an officer, agent, and representative of the CRC.

5.      At all times relevant, Mr. Bond was either the Assistant EST of the CRC or the EST of the CRC.

6.      At all times relevant, Mr. Bond owed fiduciary duties to the CRC under 29 U.S.C. 501 (a) ("fiduciary duties").

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter because the claims arise under laws of the United States, 28 U.S.C. § 1331.

8.      Venue is proper because Mr. Bond is a resident of this judicial district and State where this district is located, under 28 U.S.C. § 1391(b)(1).

9.      Venue is also proper because a substantial part of the events giving rise to this matter occurred in this judicial district, under 28 U.S.C. § 1391(b)(2).

## MR. GOULD'S 29 U.S.C. § 501 DEMANDS FROM 2008 THROUGH 2018

10.      From 2008 through 2018, Mr. Gould has been whistleblowing about fraudulent misappropriation and illegal spending of CRC monies, including, but not limited to, expenditures by CRC Business Agents, CRC Employees, and CRC Executive Board Members on:

11335249.1

a.      flying family and friends to CRC conventions or conferences;

b.      expenses for family and friends at CRC conventions or conferences;

c.      alcohol expenses at conventions and conferences;

d.      CRC vehicle policy;

e.      CRC "training seminars;"

f.      CRC "per diem;"

g.      non-business related lunches;

h.      concert tickets;

i.      musicals;

j.      plays;

k.      comedy shows;

l.      sporting events;

m.      sightseeing tours;

n.      sea world/zoo;

o.      souvenirs;

p.      gifts;

q.      loans in excess of $2000.00 to CRC employees;

r.      non-business related alcohol expenses;

s.      reimbursement of medical insurance deductibles;

t.      country club membership;

u.      birthday and retirement parties;

v.      vehicle insurance deductibles for accidents;

w.      Dinner / Lunch / Drinks reimbursed by CRC despite receipts missing:  1) who the transaction was with; 2) what the transaction was for; 3) when the transaction occurred; 4) where the transaction occurred; and 5) why the transaction occurred ("5 Ws"); and

x.      other incidentals being paid for by the CRC for CRC Business Agents, CRC   Employees, CRC Executive Board Members, and their families.

11.     On September 22, 2008, Mr. Gould contacted the Illinois Attorney General, the Department of Labor, and the National Labor Relations Board regarding his intention to seek whistleblower protection because the CRC members' money was being misappropriated from the CRC pension fund, CRC health and welfare fund, CRC training fund (collectively "CRC Fringe Benefit Funds"), CRC vacation fund, CRC market recovery check-off, CRC general funds dues check-off, Flooring Industry Advancement Fund contribution, and United Brotherhood of Carpenters Training Fund Contribution (collectively "CRC Funds") through underreporting hours to the Missouri Division of Employment Security and underpaying benefits to the CRC.  *See* **Exhibit 1**.

12.     Mr. Terry Nelson ("Mr. Nelson"), who was the CRC's EST at the time, told Mr. Gould that seeking whistleblower protection was premature and immature, that Mr. Gould's actions diminish the CRC's belief system, and that all issues of this sort must be handled by the CRC "in house."   Mr. Nelson made no changes regarding the fraudulent and illegal misappropriation of funds from the CRC or the breaches of fiduciary duties by CRC Business Agents and CRC Executive Board Members.

13.     On or about September 29, 2008, Mr. Gould communicated with Mr. Nelson regarding his whistleblower status, Mr. Nelson's reaction to Mr. Gould seeking whistleblower

protection, and Mr. Gould's concern that the actions by the CRC were fraudulent and illegal. Mr. Nelson made no changes regarding the fraudulent and illegal misappropriation of funds from the CRC or the breaches of fiduciary duties by CRC Business Agents and CRC Executive Board Members.

14.     The CRC vehicle policy includes a weekly $300.00 vehicle allowance and approximately $1000.00 per year for auto insurance, which is counted as income on the weekly paychecks of the CRC Business Agents and CRC Executive Board Members.  Thus, the CRC pays additional taxes, including social security taxes and Medicare taxes, on approximately $15,600.00 per year for fifty-one (51) CRC Business Agents, or $795,600.00.  Additionally, the CRC is paying a minimum of 13% into the International Pension for each CRC Business Agent and CRC Executive Board Member based on their total salary.  This increase of compensation for all CRC Business Agents and CRC Executive Board Members misappropriates the CRC members' funds for purposes of inflating the International Pension for all CRC Business Agents and CRC Executive Board Members.

15.     On February 18, 2009, Mr. Gould communicated via email with Ron Dicus ("Mr. Dicus"), CRC Southern Illinois Coordinator and Mr. Gould's direct supervisor, criticizing the CRC vehicle policy for CRC Business Agents and CRC Executive Board Members.  *See* **Exhibit 2.**  In response, the CRC made no changes to the vehicle policy.

16.     On September 20, 2011, Mr. Gould communicated via email with Mr. Dicus criticizing the CRC vehicle policy for CRC Business Agents and CRC Executive Board Members.  *See* **Exhibit 3.**   In response, the CRC made no changes to the vehicle policy.

17.     On October 6, 2012, Mr. Gould and Mr. Dicus communicated via email, and Mr. Gould continued his discussion of fraudulent misappropriation and illegal spending of the CRC members' monies including, but not limited to:

a.      CRC funds being misappropriated to pay for airfare for the CRC Business Agents, CRC Employees, and CRC Executive Board Members to fly family and friends to conventions or conferences;

b.      CRC funds being misappropriated to pay expenses for family and friends of CRC Business Agents, CRC Employees, and CRC Executive Board Members at CRC conventions or conferences;

c.      CRC funds being misappropriated to pay for alcohol expenses for the CRC Business Agents, CRC Employees, and CRC Executive Board Members at CRC conventions or conferences;

d.      CRC funds being misappropriated to pay for alcohol expenses for family and friends of CRC Business Agents, CRC Employees, and CRC Executive Board Members at CRC conventions or conferences;

e.      CRC funds being misappropriated through the CRC vehicle policy which adds the vehicle allowance and insurance allowance to the CRC Business Agents and CRC Executive Board Members' weekly salaries rather then set aside as a benefit;

f.      CRC funds being misappropriated to pay for CRC Business Agents, CRC Employees, and CRC Executive Board Members to attend "training seminars" where CRC Business Agents, CRC Employees, and CRC Executive Board Members did not attend the seminars;

g.      CRC funds being misappropriated to pay a "per diem" to CRC Business Agents, CRC Employees, and CRC Executive Board Members to attend "training seminars" where CRC Business Agents, CRC Employees, and CRC Executive Board Members did not attend the seminars; and

h.      CRC funds being misappropriated to pay for non-business related lunches for CRC Business Agents, CRC Employees, and CRC Executive Board Members.

*See* **Exhibit 4.** The CRC made no changes regarding the fraudulent and illegal misappropriation of funds from the CRC or the breaches of fiduciary duties by CRC Business Agents and CRC Executive Board Members.

11335249.1

18.     On April 7, 2014, Mr. Gould met with Mr. Nelson one-on-one at a lunch meeting, and discussed Mr. Gould's continued concerns about fraudulent misappropriation and illegal spending of the CRC members' monies by the CRC, Mr. Gould's whistleblower status, Mr. Gould's position with the CRC, and Mr. Gould's desire to assist the CRC in any way necessary. In response, the CRC made no changes regarding the fraudulent and illegal misappropriation of funds from the CRC or the breaches of fiduciary duties by CRC Business Agents and CRC Executive Board Members.

19.     On August 12, 2014, during a CRC meeting, Mr. Gould emailed a four-page document to "BA-IL; BA-KC; BA-MO," an email list serve for certain CRC Business Agents and CRC Executive Board Members, and also emailed the same four-page document to Mr. Nelson and Mr. Bond, containing Mr. Gould's accounting of breaches of fiduciary duties, and fraudulent misappropriation and illegal spending of the CRC members' monies, including:

a.     Breach of fiduciary duty pursuant to 29 USC § 501(a);

b.     Violation of statutory duty pursuant to 29 USC § 501(c);

c.     Withholding accounting information from CRC Delegates in violation of 29 USC § 501;

d.     Withholding accounting information from CRC members in violation of 29 USC § 501;

e.     Misappropriation of CRC members' funds to benefit certain CRC Business Agents, CRC Employees, and CRC Executive Board Members in violation of 29 USC § 501;

f.     Theft or conversion of CRC members' funds to benefit certain CRC Business Agents, CRC Employees, and CRC Executive Board Members in violation of 29 USC § 501;

g.     Violation of 29 USC § 501, the UBC Constitution, and the NLRA regarding accounting to CRC members for expenditure of CRC funds;

11335249.1

h.    Excessive compensation, benefits, travel, expenses, and other perquisites for certain CRC Business Agents, CRC Employees, and CRC Executive Board Members in violation of 29 USC § 501;

i.    Misappropriation of CRC funds spent on alcohol, food, and travel by certain CRC Business Agents, CRC Employees, and CRC Executive Board Members in violation of 29 USC § 501;

j.    Misappropriation of CRC funds being spent on alcohol, food and travel for spouses/family members/guests by certain CRC Business Agents, CRC Employees, and CRC Executive Board Members in violation of 29 USC § 501;

k.    Travel receipts being intentionally prepared, submitted, and paid by CRC that hide alcohol expenditures and other expenses paid for spouses/family members/guests by certain CRC Business Agents, CRC Employees, and CRC Executive Board Members in violation of 29 USC § 501;

l.    Theft or conversion of CRC members' funds for use by certain CRC Business Agents, CRC Employees, and CRC Executive Board Members to pay for spouses/family members/guests to travel to CRC conventions and events in violation of 29 USC § 501;

m.    Theft or conversion of CRC members' funds for use by certain CRC Business Agents, CRC Employees, and CRC Executive Board Members to pay for extra days and nights either before or after a CRC convention or CRC event in violation of 29 USC § 501;

n.    Theft or conversion of CRC members' funds for use by certain CRC Business Agents, CRC Employees, and CRC Executive Board Members to pay for free golf, hunting, food, and alcohol in violation of 29 USC § 501;

o.    Violation of 29 USC § 501 through participation in a vehicle policy consisting of excessive compensation designed to increase the pensions of CRC Business Agents and CRC Executive Board Members;

p.    Violation of 29 USC § 501 through CRC spending that is exorbitant and inconsistent with the interests of the CRC members as a whole and fails to comply with federal law and regulations regarding accountability to the CRC members;

q.    Violation of state and federal law, including 29 USC § 501, through fraudulent accounting enticing CRC members and CRC Delegates to approve dues check-off increases through deceit or coercion; and

        r.      Violation of 29 USC § 501, regarding the audits in 2007 and 2008 involving the misappropriation of CRC members' funds that must be allocated to CRC Fringe Benefit Funds and CRC Funds.

*See* **Exhibits 5, 6 and 7**.

20.    At the August 12, 2014 CRC meeting, Mr. Gould gave a speech to Mr. Nelson, Mr. Bond, his CRC superiors, CRC Delegates from Southern Illinois, Missouri and Kansas, and CRC members, stating:

        a.      Mr. Gould had been working to stop the CRC vehicle policy since 2007;

        b.      The CRC vehicle policy violated 29 USC § 501 and was being used to provide excessive compensation and inflate pensions for CRC Business Agents and CRC Executive Board members; and

        c.      Certain CRC Business Agents, CRC Employees, and CRC Executive Board Members had breached their fiduciary duties to the CRC members through misappropriation of funds.

*See* **Exhibit 5**.

21.    From 2008 through 2018, Mr. Gould was a whistleblower to Mr. Nelson, Mr. Bond, Mr. Dicus, and other CRC Superiors regarding breaches of fiduciary duties, and fraudulent misappropriation and illegal spending of the CRC members' monies, including but not limited to:

        a.      2008 – to Mr. Nelson, Mr. Dicus, Mr. Thuston, the Illinois Attorney General, the Department of Labor, and the National Labor Relations Board;

        b.      2008 – to Mr. Nelson;

        c.      2009 – to Mr. Dicus;

        d.      2011 – to Mr. Dicus;

        e.      2012 – to Mr. Dicus;

f.      2014 – to Mr. Nelson;

g.      2014 – to Mr. Nelson, Mr. Bond, all recipients of the email and 4-page attachment sent to "BA-IL; BA-KC; BA-MO", and other unknown CRC bosses and superiors of Mr. Gould.

*See* **Exhibits 1 – 7**.

22.     Despite Mr. Gould's continued efforts to expose and change policies and practices of the CRC and eliminate breaches of fiduciary duties, and fraudulent misappropriation and illegal spending of the CRC members' monies by certain CRC Business Agents, CRC Executive Board Members, and CRC Employees, no changes were made by Mr. Nelson, Mr. Bond, or any CRC Business Agent or CRC Executive Board Member to remedy any breach of fiduciary duty and the fraudulent and illegal misappropriation of funds from the CRC by CRC Business Agents, CRC Executive Board Members, and CRC employees.

23.     As a result, from 2008 through 2018, Mr. Gould's demand for damages and/or an accounting pursuant to 29 U.S.C. § 501 was futile.

### MR. GOULD'S FORMAL DEMAND TO MR. BOND FOR DAMAGES AND/OR AN ACCOUNTING PURSUANT TO 29 U.S.C. § 501

24.     Despite his repeated attempts over the course of many years to stop breaches of fiduciary duties and fraudulent and illegal misappropriation of funds by Mr. Nelson and Mr. Bond, on January 12, 2018, Mr. Gould sent Mr. Bond a formal demand letter, under 29 U.S.C. § 501(b), demanding:

a.      suit be brought on behalf of the CRC to recover damages;

b.      to secure an accounting for CRC; and/or

c.      to seek other appropriate relief on behalf of CRC.

*See* 29 U.S.C. § 501(b) demand letter attached as **Exhibit 8**.

25.     On January 23, 2018, Executive Secretary Treasurer Al Bond answered Mr. Gould's Demand, stating, "the Council will launch a thorough and comprehensive investigation of [Mr. Gould's] allegations…" Mr. Bond acknowledged the CRC has "a duty both to the Council and our 22,000 members to remove all doubt respecting whether we are fulfilling our fiduciary duties as required by federal law and the Council's governing documents." Mr. Bond stated that CRC would retain the services of Calibre CPA Group ("Calibre") to investigate. *See* **Exhibit 9**.

26.     On January 26, 2018, Mr. Gould responded to Mr. Bond, stating his skepticism to Bond's proposed Accounting: 1) Calibre is not impartial to any CRC Accounting because Calibre was paid in excess of $330,000 from 2012 to 2016 by the International Carpenters' Union; and 2) Mr. Gould has been working to change misappropriation and mismanagement of CRC funds for close to a decade to no avail. In good faith, Mr. Gould requested to share documents obtained from the CRC through discovery directly with Calibre to ensure the accuracy of the Accounting. *See* **Exhibit 10.**

27.     On January 31, 2018, CRC hired Mr. Clash-Drexler from Bredhoff & Kaiser in Washington, D.C., to correspond with Mr. Gould.  Despite Mr. Gould's good faith effort to work directly with Calibre, Mr. Clash-Drexler denied Mr. Gould access to Calibre, and directed Mr. Gould to send any documents to Mr. Clash-Drexler, who would deliver the documents to Calibre. Mr. Clash-Drexler assured Mr. Gould that "[s]hould he choose to do so," Mr. Clash-Drexler would forward any documents sent by Mr. Gould "to Calibre upon receipt." *See* **Exhibit 11.**

28.     On April 11, 2018, Mr. Clash-Drexler advised Mr. Gould, "[t]he Regional Council staff provided Calibre with full cooperation and unrestricted access to the relevant

financial records, including the Council's regular audit reports, expense reimbursement policies, employee expense reports, credit card records, and back-up documents." Mr. Gould was told to expect a completed Accounting in April, and he was invited to share any documents he believed would be relevant to the accounting with Mr. Clash-Drexler, but not directly with Calibre as requested.  *See* **Exhibit 12.**

29.     On April 19, 2018, in response to Mr. Clash-Drexler's April 11, 2018 letter, Mr. Gould agreed to provide CRC documents to Mr. Clash-Drexler, rather than directly to Calibre, based on Mr. Clash-Drexler's representation that the documents would, in fact, be given to Calibre. Approximately eighteen thousand (18,000) documents consisting mostly of expense reports, credit card receipts, and other CRC accounting documents showing violations of 29 USC § 501 through fraudulent misappropriation of CRC funds, were sent to Mr. Clash-Drexler to be forwarded to Calibre for the Accounting.  *See* **Exhibit 13.**

30.     On May 3, 2018, despite his assurance that he would forward documents to Calibre from Mr. Gould, Mr. Clash-Drexler informed Mr. Gould that he had withheld the eighteen thousand (18,000) documents from Calibre. Mr. Clash-Drexler misstated several times what Mr. Gould demanded from the CRC in an effort to limit the scope of Calibre's Accounting, and limited the scope of what Calibre would be permitted to review. Mr. Clash-Drexler informed Mr. Gould that he had seven (7) days to identify the documents showing violations of 29 USC § 501 through fraudulent misappropriation of CRC funds, or the CRC would assume Mr. Gould would not be submitting documents for Calibre's review, and the Accounting would be completed.  *See* **Exhibit 14.**

31.     On May 11, 2018, in response to Mr. Clash-Drexler withholding documents from Calibre and limiting the scope of Calibre's accounting, Mr. Gould reiterated that his attempt to

obtain a full, complete, and accurate Accounting was futile. Mr. Gould sent Mr. Clash-Drexler the following for Calibre's review:

    a.    Expense report documents for CRC Business Agents, CRC Employees, and CRC Executive Board Members.  This consisted of approximately 17,302 pages;

    b.    Expense report documents for Bartolino's Osteria showing Mr. Nelson, Mr. Bond, and other CRC Business Agents, CRC Employees, and CRC Executive Board Members having non-business related lunches paid for by the CRC. This was approximately 1,050 pages; and

    c.    Documents responsive to discovery showing the expenditures by the CRC from approximately 2010 through August of 2014. This was approximately 102,318 pages.

The documents provided were well organized (as requested by CRC) and revealed violations of 29 USC § 501 through fraudulent misappropriation of CRC funds.  *See* **Exhibit 15.**

    32.    On May 25, 2018, now in possession of the documents provided by Mr. Gould for more than one (1) month, Mr. Clash-Drexler informed Mr. Gould that the documents would be withheld from Calibre because they have not been sorted "both by document and category" by Mr. Gould. Mr. Gould was assured that documents sent to Mr. Clash-Drexler would be forwarded to Calibre to be analyzed as part of the Accounting.  Mr. Clash-Drexler also informed Mr. Gould that only the expenditures of the Defendants in Mr. Gould's lawsuit are being analyzed by Calibre, and only "the five specific instances of alleged misappropriation" identified by Mr. Gould are being investigated as part of the Accounting. Mr. Clash-Drexler's response on the CRC's behalf constitutes further proof that Mr. Gould's demand to recover damages and obtain an Accounting was futile.  *See* **Exhibit 16.**

    33.    On June 25, 2018, Mr. Gould demanded, once again, to work directly with Calibre to ensure a good faith Accounting in an effort to return fraudulently misappropriated money to the CRC members. In a continuing effort to get documents to Calibre to be analyzed as

part of the Accounting, Mr. Gould sent Mr. Clash-Drexler approximately 800 documents which had been sorted and categorized showing violations of 29 USC § 501 through fraudulent misappropriation of CRC funds, including:

      a.    Expense Vouchers from CRC, Expense Cover Sheets from CRC, and corresponding receipts showing spending that was not business related. Expenditures include: CRC Business Agent, CRC Employee, and CRC Executive Board Member spousal travel expenses, spousal dinner expenses; spousal alcohol expenses; non-business related alcohol expenses; non-business related dinner expenses; non-business related tours for purposes of entertainment; non-business related attendance at shows for purposes of entertainment; unverified cab expenses; travel and expenses by CRC employees with no reason to attend trade shows; etc.

      b.    Bartolino's Osteria receipts showing Mr. Nelson and Mr. Bond charging lunch to the CRC for lunches that were not business related. As shown, Mr. Nelson and Mr. Bond dined alone, took only other CRC Business Agents, CRC employees, and CRC Executive Board Members to lunch, or took CRC office staff and secretaries to lunch and turned in the receipts to CRC for reimbursement. These were usually turned in as "Meetings," but were nothing more than employees having lunch together.

      c.    CRC credit card receipts showing CRC Business Agent, CRC Employee, and CRC Executive Board Member spouse/family/friend travel expenses including expenses for airfare, food, alcohol, and entertainment.  These expenses were charged to the CRC credit card.

*See* **Exhibit 17.**

34.    On August 16, 2018, despite being assured the documents that Mr. Gould provided would be analyzed by Calibre as part of the Accounting, Mr. Clash-Drexler admitted that he never forwarded the documents to Calibre for review. As a result, the Calibre "Special Review" was concluded without any analysis of documents directly on point showing violations of 29 USC § 501 through fraudulent misappropriation of CRC funds. Not surprisingly, the "Special Review" conducted by Calibre found no issue with any of the CRC members' conduct despite being sent tens of thousands of documents proving otherwise. After approximately eight

(8) months, and tens of thousands of dollars of wasted time and resources, Mr. Gould's demand for damages and an Accounting was still futile.  *See* **Exhibit 18.**

35.     On September 14, 2018, Mr. Gould responded to the findings of the Calibre "Special Review."  What Mr. Gould knew on January 12, 2018, had been confirmed by the CRC and Mr. Bond. Mr. Gould's demand to recover damages and seek an Accounting pursuant to 29 U.S.C. § 501 on behalf of the CRC's members was futile.  *See* **Exhibit 19.**

36.     On September 20, 2018, Calibre provided "Supplemental Information" to the "Special Review," finding:

> This is to supplement our written report of August 9, 2018. In that report, we noted that there was missing documentation consisting of fourteen transactions amounting to $1,341 relating to one individual. Subsequent to the issuance of that report, we have been provided with supporting documentation for nine of those transactions.  This documentation appears to satisfy the expense substantiation requirements of the DOL and IRS. Furthermore, it is our understanding that $539 which is the total of the remaining five transactions for which support has not been provided, will be remitted by the one individual to the Regional Council.

*See* **Exhibit 20**.

37.     Despite the fact Calibre was not permitted to review any of the documents provided by Mr. Gould, Calibre only reviewed documents from July 1, 2013 to August 9, 2018, Calibre only reviewed documents for specific individuals, Calibre limited the scope of review to what was alleged in a City of St. Louis lawsuit, and Calibre had a potential conflict of interest, Calibre still found violations of 29 USC § 501 through fraudulent misappropriation of CRC funds in the amount of $539.00.  *See* **Exhibit 20.**

38.     The "Special Review" performed by Calibre in response to Mr. Gould's formal demand for damages or an Accounting on January 12, 2018 shows Mr. Gould's demands are futile and only a 29 U.S.C. § 501 lawsuit will provide Mr. Gould, on behalf of the CRC, a remedy.

### MR. BOND'S FIDUCIARY DUTY TO ENSURE ALL CRC EXPENDITURES ARE/WERE MADE IN ACCORDANCE WITH 29 U.S.C. § 501 (a), AND INTERNAL CRC EXPENSE REIMBURSEMENT POLICIES

39.     As an Officer of the CRC, Mr. Bond owed the CRC various statutory duties and

responsibilities, including but not limited to:

    a.     The duty to hold CRC money and property solely for the benefit of the CRC and its members;

    b.     The duty to manage, invest, and expend CRC funds in accordance with its Constitution and bylaws;

    c.     The duty to refrain from holding or acquiring any pecuniary and personal interest which conflicts with the interests of the CRC; and

    d.     The duty to account to the CRC for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the CRC.

*See* 29 U.S.C. § 501.

40.     The CRC expense reimbursement policy stated:

    [r]eimbursements will only be made for actual expenses properly incurred that are related to [CRC] business. **All expenses should be reasonable and documented. Each expense (including each meal) must be supported by a receipt or other documentation. The name of the person, the event and purpose of the expense should be documented on the receipt**.

*See* **Exhibits 21, 22, 23** (emphasis in original).

41.     The CRC expense reimbursement policy stated:   "[b]usiness entertainment

expense is reimbursable only if it was incurred for legitimate union purposes." *See* **Exhibits 21,**

**22, 23.**

42.     The CRC expense reimbursement policy required the funds of the CRC to be

managed according to the "prudent man rule." *See* **Exhibits 21, 22, 23.**

43.     The CRC expense reimbursement policy stated:  "[t]he CRC Executive Secretary Treasurer should determine in advance whether an employee or trustee should attend a particular seminar and that attendance will be in the best interest of the fund."  *See* **Exhibits 21, 22, 23.**

44.     The CRC expense reimbursement policy stated:  "[t]he union will reimburse for travel by coach air unless circumstance warrant an employee to travel first class.  All first class travel must be approved by the Executive Secretary Treasurer."  *See* **Exhibits 21, 22, 23.**

45.     The CRC expense reimbursement policy stated:  [i]tems of a personal nature and souvenirs are not acceptable expenses.  *See* **Exhibits 21, 22, 23.**

46.     The CRC expense reimbursement policy states:   "The Executive Secretary Treasurer is responsible for reviewing the expense reports submitted by employees and trustees." *See* **Exhibits 21, 22, 23.**

## FACTS SPECIFIC TO CLAIMS AGAINST MR. BOND ON BEHALF OF THE CRC

47.     As the former EST, Mr. Nelson owed fiduciary duties to the CRC to review all expense reports submitted by CRC Business Agents, CRC Executive Board Members, and CRC Employees to ensure the CRC members' monies were spent according to 29 U.S.C. §501(a) and CRC expense reimbursement policy.

48.     Mr. Nelson breached his 29 U.S.C. §501(a) fiduciary duties to the CRC by authorizing the misappropriation of CRC funds during his reign as CRC EST by authorizing CRC Business Agents, CRC Executive Board Members, and CRC Employees to spend the CRC members' monies in violation of 29 U.S.C. §501(a) and CRC expense reimbursement policy.

49.     Mr. Bond, as the Assistant EST, was aware of and complicit in, Mr. Nelson's breaches of fiduciary duties.

11335249.1

50.     As the Assistant EST, an Officer of the CRC, Mr. Bond had fiduciary duties to the CRC under 29 U.S.C. §501(a) and the CRC expense reimbursement policy.

51.     Mr. Bond breached his 29 U.S.C. §501(a) fiduciary duties to the CRC and violated the CRC expense reimbursement policy on numerous occasions while employed as the Assistant EST, Officer of the CRC, and as EST.

52.     Although not intended to be an exhaustive list, on behalf of the CRC, Mr. Gould provides the following examples of CRC Business Agents, CRC Executive Board Members, and CRC Employees spending the CRC members' funds in violation of 29 U.S.C. §501(a) and the CRC expense reimbursement policy:

1.     $134.95 was an approved CRC expenditure for Brett Buenger to rent machine guns and hand guns, purchase ammunition, purchase a t-shirt, and shoot at a shooting range in Las Vegas.  *See* DFTS 070324, DFTS 075919 – DFTS075940.

2.     CRC permitted reimbursement of this expense despite the fact that it was not allowed pursuant to 29 U.S. §501 and RSMo. § 570.030.  *See* DFTS 070324.

*See* **Exhibit 24**.

3.     $293.65 was an approved CRC expenditure for a CRC Business Agent for alcohol with no names or union business purpose on the receipt.  *See* DFTS021692, DFTS021693, and DFTS021694.

4.     $137.00 was an approved CRC expenditure for a CRC Business Agent for alcohol with no names or union business purpose listed on the receipt.  *See* DFTS021696 and  DFTS021697.

*See* **Exhibit 25**.

5.     $200.00 was an approved CRC expenditure for food and alcohol for CRC Business Agents and spouses with no union business purchase on receipt.  *See* DFTS020900 and  DFTS020901.

6.     $66.00 was an approved CRC expenditure for an Argosy Cruise in Seattle, Washington for a CRC Business Agent with no names listed or union business purpose listed on receipt.  *See* DFTS020906 and  DFTS020907.

*See* **Exhibit 26.**

7.     $184.44 was an approved CRC expenditure for alcohol for CRC Business Agents and CRC employees/staff at the Kansas City Airport with no union business purpose listed.  *See* DFTS082416.

8.     $118.36 was an approved CRC dinner expense with no itemized receipt, no names and no union business purpose.  *See* DFTS082423.

9.     $106.22 was an approved CRC dinner expense with no itemized receipt, no names and no union business purpose.  *See* DFTS082427.

10.     $27.84 was an approved CRC entertainment expense for a CRC Business Agent with no names and no union business purpose.  *See* DFTS082448.

11.     $143.00 was an approved CRC expense for a CRC Business Agent at the Blarney Stone with no names, no itemized receipt, and no union business purpose.  *See* DFTS082450 – DFTS082453.

12.     $97.32 was an approved CRC entertainment expense for a CRC Business Agent for Space Needle and Ride the Ducks with no names and no union business purpose.  *See* DFTS082454 – DFTS082459.

*See* **Exhibit 27.**

13.     $275.00 was an approved CRC expense for taxis with nothing more than a date and amount on some receipts, or no corresponding receipt; Mr. Nelson reimbursed himself with CRC funds.  *See* DFTS077736 – DFTS077737; DFTS077746 – DFTS077759.

14.     $313.00 was an approved CRC expense for Nancy Nelson, Terrence Nelson's wife, to see Las Vegas shows including Defending the Caveman and Donny and Marie, with no names or union business purpose; Mr. Nelson reimbursed himself with CRC funds for the cost of Nancy Nelson's show tickets.  *See* DFTS077760 – DFTS077768.

15.     $50.12 was an approved CRC expense for snacks, drinks and magazines in Las Vegas; Mr. Nelson reimbursed himself with CRC funds for these items.  *See* DFTS077769 – DFTS077770.

*See* **Exhibit 28.**

16.     $281.20 was an approved CRC expense for "entertainment" for a CRC Business Agent, including a tour.  *See* DFTS063439.

17.     $88.20 was an approved CRC expense for a CRC Business Agent for alcohol with no union business purpose listed.  *See* DFTS063443 and DFTS063444.

18.     $56.00 was an approved CRC expense for a CRC Business Agent for alcohol with no union business purpose listed.  *See* DFTS063446 and DFTS063447.

*See* **Exhibit 29.**

19.     $40.00 was an approved CRC expense for alcohol and soft drinks for a CRC Business Agent at the St. Louis Airport with no names or union business purpose. *See* DFTS013372.

20.     $324.61 was an approved CRC expense for dinner for CRC Business Agents and spouses with no union business purpose listed on receipt.  *See* DFTS013373 - DFTS013375.

21.     $534.59 was an approved CRC expense for dinner for CRC Business Agents and spouses with no union business purpose listed on receipt.  *See* DFTS013385 - DFTS013386.

22.     $42.00 was an approved CRC expense for entertainment for a CRC Business Agent and spouse to go on a tour and drink cocktails.  *See* DFTS013370, DFTS013387 - DFTS013388.

23.     $84.00 was an approved CRC expense for entertainment for a CRC Business Agent and spouse and CRC employee/staff to go on a tour.  *See* DFTS013370, DFTS013389 - DFTS013390.

24.     $536.36 was an approved CRC expense for dinner for CRC Business Agents and spouses, and CRC employee/staff, with no union business purpose listed on the receipt. *See* DFTS013397 - DFTS013399.

*See* **Exhibit 30.**

25.     $18.00 was an approved CRC expense for a CRC Business Agent to ride the Space Needle with no names or union business purposes listed on the receipt.  *See* DFTS010991 - DFTS010992.

26.     $135.70 was an approved CRC expense for CRC Business Agents and spouses to have dinner with no itemized receipt and no union business purposes listed on receipt. *See* DFTS011001 - DFTS011002.

27.     $157.40 was an approved CRC expense for a CRC Business Agent dinner with no itemized receipt and no union business purposes listed on receipt.  *See* DFTS011003.

28.     $120.30 was an approved CRC expense at the Blarney Stone for a CRC Business Agent with no itemized receipt and no union business purposes listed on receipt. *See* DFTS011006 - DFTS011007.

29.     $93.29 was an approved CRC expense for dinner for a CRC Business Agent with no itemized receipt and no union business purposes listed on receipt.  *See* DFTS011009 - DFTS011010.

30.     $114.50 was an approved CRC expense for alcohol at the Blarney Stone for a CRC Business Agent and no union business purposes listed on receipt.  *See* DFTS011012 - DFTS0114.

*See* **Exhibit 31.**

31.     $98.00 was an approved CRC expense for a CRC Business Agent and spouse to have dinner with no itemized receipt and no union business purpose listed on receipt. *See* DFTS005240 - DFTS005241.

32.     $144.00 was an approved CRC expense for CRC Business Agents and CRC Business Agent and spouse to drink alcohol over the course of one day with no union business purpose listed on receipts, and no itemized purchases on some receipts. *See* DFTS005237, DFTS005244 - DFTS005260.

33.     $233.00 was an approved CRC expense for CRC Business Agents and CRC Business Agent and spouse to drink alcohol over the course of one day with no union business purpose listed on receipts, and no itemized purchases on some receipts. *See* DFTS005237, DFTS005267 - DFTS005282.

34.     $173.00 was an approved CRC expense for CRC Business Agents and CRC Business Agent and spouse to drink alcohol over the course of one day with no union business purpose listed on receipts, and no itemized purchases on some receipts. *See* DFTS005290 - DFTS005306.

*See* **Exhibit 32.**

35.     $448.00 was an approved CRC expense for a hotel suite upgrade for a CRC Business Agent with no union business purpose listed. *See* DFTS100709, DFTS100715.

36.     $318.00 was an approved CRC expense for a CRC Business Agent at restaurants/bars with no itemized receipts, no names, and no union business purposes listed. *See* DFTS100715.

37.     $16.99 was an approved CRC expense for a CRC Business Agent to watch a movie with no itemized receipts, no names, and no union business purposes listed. *See* DFTS100709, DFTS100715.

*See* **Exhibit 33.**

38.     $972.00 was an approved CRC expense for CRC Business Agents and spouses to go on an Argosy Cruise in Seattle, Washington, with no union business purpose listed. *See* DFTS088631, DFTS088632.

39.     $42.00 was an approved CRC expense for a CRC Business Agent and spouse to go on an Underground Tour in Seattle, Washington, with no union business purpose listed. *See* DFTS088631, DFTS088638 - DFTS088639.

40.     $122.88 was an approved CRC expense for CRC Business Agent to drink alcohol with no union business purpose listed. *See* DFTS088631, DFTS088640 - DFTS088643.

*See* **Exhibit 34.**

41.     $105.00 was an approved CRC expense for CRC Prevailing Wage Investigator, CRC Business Agent and spouse to go on a History Tours of America tour with no union business purposes listed. *See* DFTS054318 and DFTS054344.

42.     $749.48 was an approved CRC expense for dinner with no names and no union business purpose listed.  *See* DFTS054318, DFTS054348 - DFTS054350.

43.     $100.15 was an approved CRC expense for dinner with no itemized receipt and no union business purpose listed.  *See* DFTS054318, DFTS054362.

*See* **Exhibit 35.**

44.     $138.12 was an approved CRC expense for a Savor Seattle Food Tour for a CRC accounting/clerical employee with no union business purpose listed.  *See* DFTS063336, DFTS063337 - DFTS063338.

45.     $47.00 was an approved CRC expense for an Underground Tour and alcohol for a CRC accounting/clerical employee with no union business purpose listed.  *See* DFTS063337, DFTS063340.

46.     $62.20 was an approved CRC expense for a Seattle Mariners baseball game for a CRC accounting/clerical employee with no union business purpose listed.  *See* DFTS063337, DFTS063342 - DFTS063343.

47.     $88.00 was an approved CRC expense for alcohol for a CRC accounting/clerical employee with no union business purpose listed.  *See* DFTS063337, DFTS063350 - DFTS063353.

48.     $66.32 was an approved CRC expense for a CRC accounting/clerical employee to go on a Ride the Ducks tour with no union business purpose listed.  *See* DFTS063337, DFTS063354 - DFTS063355.

49.     $38.00 was an approved CRC expense for a CRC accounting/clerical employee to go to the Seattle Aquarium with no union business purpose listed.  *See* DFTS063337, DFTS063361.

50.     $90.90 was an approved CRC expense for a CRC accounting/clerical employee to drink alcohol and have dinner with no itemized receipts and no union business purpose listed.  *See* DFTS063337, DFTS063370 - DFTS063373.

51.     $54.21 was an approved CRC expense for a CRC accounting/clerical employee to drink alcohol and have lunch with no itemized receipts and no union business purpose listed.  *See* DFTS063337, DFTS063375 - DFTS06377

52.     $80.00 was an approved CRC expense for the airline luggage fees for a CRC accounting/clerical employee and her spouse.  *See* DFTS063337, DFTS063337, DFTS063396 - DFTS06401.

*See* **Exhibit 36.**

53.     $330.47 was an approved CRC expense for a CRC Business Agent for miscellaneous, food & beverage, and shops at the Hilton, San Diego, with no itemized receipts and no union business purpose listed.  *See* DFTS071849 - DFTS071850.

54.     $15.00 was an approved CRC expense for airline baggage fees for CRC Business Agent's spouse.  *See* DFTS071848, DFTS071856.

55.    $80.00 was an approved CRC expense for a CRC Business Agent and spouse to go to the San Diego Zoo.  *See* DFTS071848, DFTS071856.

56.    $17.00 was an approved CRC expense for a CRC Business Agent and spouse to go on tour of Midway Ship.  *See* DFTS071848.

57.    $42.00 was an approved CRC expense for a CRC Business Agent and spouse to go on a Harbor Cruise.  *See* DFTS071848.

*See* **Exhibit 37.**

58.    $68.57 was an approved CRC expense for a CRC Business Agent to drink alcohol with no names listed or union business purpose listed on the receipt.  *See* DFTS090602 - DFTS090605.

59.    $106.77 was an approved CRC expense for a CRC Business Agent to drink alcohol and eat dinner with no names listed or union business purpose listed on the receipt. *See* DFTS090605.

60.    $268.76 was an approved CRC expense for a CRC Business Agent to eat dinner with no itemized receipt, no names listed, or union business purpose listed on the receipt. *See* DFTS090609.

61.    $108.00 was an approved CRC expense for a CRC Business Agent to take a Historic Tours of America with no names listed or union business purpose listed on the receipt.  *See* DFTS090617.

62.    $70.00 was an approved CRC expense for a CRC Business Agent to go to the San Diego Zoo with no names listed or union business purpose listed on the receipt. *See* DFTS090620.

63.    $74.79 was an approved CRC expense for a CRC Business Agent to drink alcohol at Lambert Airport in St. Louis, MO at 8:18 AM with no names listed and no union business purpose listed on the receipt.  *See* DFTS090622.

*See* **Exhibit 38.**

64.    $129.00 was an approved CRC expense for a CRC Business Agent to drink alcohol and eat with no itemized receipt, no names listed on the receipt, and no union business purpose listed on the receipt; receipt states there are no receipts for these expenses. *See* DFTS025578.

65.    $140.00 was an approved CRC expense for a CRC Business Agent to take a limousine in Las Vegas. *See* DFTS025577, DFTS025581.

66.    $119.00 was an approved CRC expense for a CRC Business Agent to drink alcohol over the course of one day with no names listed on the receipt, and no union business purpose listed on the receipt.  *See* DFTS025584 - DFTS025587.

*See* **Exhibit 39.**

11335249.1

67.     $227.00 was an approved CRC expense for a CRC Business Agent to drink alcohol over the course of one day in Las Vegas with no names listed on the receipts and no union business purpose listed on the receipts.  *See* DFTS098187 - DFTS098194.

68.     $100.00 was an approved CRC expense for a CRC Business Agent to drink alcohol over the course of one day in Las Vegas with no names listed on the receipts and no union business purpose listed on the receipts.  *See* DFTS098194 - DFTS098195.

69.     $325.00 was an approved CRC expense for a CRC Business Agent to drink alcohol and eat dinner in Las Vegas with no names listed on the receipt and no union business purpose listed on the receipt.  *See* DFTS098201.

*See* **Exhibit 40.**

70.     $9.53 was an approved CRC expense for a CRC Business Agent to purchase lighters and cigars with no names listed on the receipt and no union business purpose listed on the receipt.  *See* DFTS067129.

71.     $8.11 was an approved CRC expense for a CRC Business Agent to purchase lighters, cigars and drinks with no names listed on the receipt and no union business purpose listed on the receipt.  *See* DFTS067130.

*See* **Exhibit 41.**

72.     $185.00 was an approved CRC expense for a CRC Business Agent to drink alcohol over the course of one day with no names listed on the receipts and no union business purpose listed on the receipts.  *See* DFTS056018, DFTS056022 – DFTS056027.

73.     $871.30 was an approved CRC expense for a CRC Business Agent with no itemized receipt, no names listed on the receipt, and no union business purpose listed on the receipt.  *See* DFTS056018, DFTS056033.

*See* **Exhibit 42.**

74.     $1,752.00 was an approved CRC expense for a CRC Business Agent and eleven unknown individuals to see Cher in Las Vegas with no names listed on the receipts and no union business purpose listed on the receipts.  *See* DFTS066773, DFTS066774 – DFTS066775.

75.     $578.17 was an approved CRC expense for a CRC Business Agent to drink alcohol and eat in Las Vegas with no names listed on the receipts and no union business purpose listed on the receipts.  *See* DFTS066773, DFTS066782 – DFTS066783.

*See* **Exhibit 43.**

76.     $156.74 was an approved CRC expense for a CRC clerical/accounting employee with no itemized receipt, no names listed on the receipt, and no union business purpose listed on the receipt.  *See* DFTS029919, DFTS029927.

77.     $146.84 was an approved CRC expense for a CRC clerical/accounting employee at Seaworld in San Diego with no names listed on the receipts and no union business

11335249.1

purpose listed on the receipts.  *See* DFTS029919, DFTS029930, DFTS029931, and DFTS029933.

78.    $140.65 was an approved CRC expense for a CRC clerical/accounting employee with no itemized receipt, no names listed on the receipt, and no union business purpose listed on the receipt.  *See* DFTS029919, DFTS029932, DFTS029934.

*See* **Exhibit 44.**

79.    $60.41 was an approved CRC expense for a CRC Business Agent to drink and eat in San Diego with no itemized receipts, no names listed on the receipts, and no union business purpose listed on the receipts.  *See* DFTS084919.

80.    $15.00 was an approved CRC expense for a CRC Business Agent's spouse's airline baggage fees.  *See* DFTS084918, DFTS084924.

81.    $209.68 was an approved CRC expense for a CRC Business Agent to drink and eat in San Diego over the course of one day with no itemized receipts, no names listed on the receipts, and no union business purpose listed on the receipts.  *See* DFTS084918, DFTS084927 - DFTS084933.

82.    $194.14 was an approved CRC expense for a CRC Business Agent to drink and eat in San Diego over the course of one day with no names listed on the receipts and no union business purpose listed on the receipts.  *See* DFTS084918, DFTS084941.

83.    $115.11 was an approved CRC expense for a CRC Business Agent to go to Seaworld in San Diego.  *See* DFTS084918, DFTS084942 - DFTS084943.

*See* **Exhibit 45.**

84.    $251.75 was an approved CRC expense for a CRC Business Agent to eat and drink alcohol in Alaska, with no names on receipt and no union business purpose listed on the receipt.  *See* DFTS055742

85.    $200.00 was an approved CRC expense for a CRC Business Agent to tip in Alaska, with no names on receipt and no union business purpose listed on the receipt.  *See* DFTS055748.

86.    $192.37 was an approved CRC expense for a CRC Business Agent to purchase alcohol in Alaska, with no names on receipt and no union business purpose listed on the receipt.  *See* DFTS038610.

87.    $150.00 was an approved CRC expense for a CRC Business Agent to eat and drink in Alaska, with no names on receipt and no union business purpose listed on the receipt.  *See* DFTS038610.

*See* **Exhibit 46.**

88.    $418.20 was an approved CRC expense for CRC Business Agent's spouse (Alma Holzer) to travel by plane to Las Vegas with no union business purpose listed.  *See* DFTS028875.

89.     $418.20 was an approved CRC expense for CRC office staff's spouse (Troy McCrumb) to travel by plane to Las Vegas with no union business purpose listed. *See* DFTS028875.

90.     $502.20 was an approved CRC expense for CRC Business Agent's spouse (Alma Holzer) to travel by plane to San Diego with no union business purpose listed. *See* DFTS028873.

*See* **Exhibit 47.**

91.     $1,300.91 was an approved CRC expense on August 8, 2014 for alcohol and food at Bruno's for an employee retirement party with no names on the receipt and no union business purpose listed. *See* DFTS073072, DFTS073565 - DFTS073568.

92.     $95.43 was an approved CRC expense on August 8, 2014 for alcohol and food at Bruno's with no names on the receipt and no union business purpose listed. *See* DFTS073072, DFTS073569 - DFTS073571.

93.     $76.50 was an approved CRC expense on August 8, 2014 for alcohol at Bruno's with no union business purpose listed. *See* DFTS073072, DFTS073572 - DFTS073574.

*See* **Exhibit 48.**

94.     CRC paid for spouse Nancy Sweeny's airfare to Reno-Tahoe at a cost of $310.40. *See* DFTS088750.

95.     CRC paid for friend Kathleen Sullivan's airfare to Reno-Tahoe at a cost of $436.40. *See* DFTS088752.

96.     CRC paid for spouse Jann Roche's airfare to Reno-Tahoe at a cost of $344.20. *See* DFTS088754.

97.     CRC paid for spouse Denise Thuston's airfare to Reno-Tahoe at a cost of $466.40. See DFTS088752.

*See* **Exhibit 49.**

98.     CRC paid for spouse Nancy Nelson's airfare to Orlando at a cost of $225.20. DFTS052972.

99.     CRC paid for spouse Christine Bond's airfare to Orlando at a cost of $225.20. DFTS052972.

100.    CRC paid for spouse Alma Holzer's airfare to Orlando at a cost of $225.20. DFTS052972.

*See* **Exhibit 50.**

101.    CRC paid $190.40 for CRC office staff employee Debbie Collins' hotel room in Las Vegas with no union business purpose listed on the receipt. *See* DFTS066579.

102.   CRC paid $553.20 for CRC office staff employee Debbie Collins' airfare to Las Vegas with no union business purpose listed on the receipt. *See* DFTS066581.

103.   CRC paid $553.20 for CRC office staff employee Debbie Collins' spouse, Dennis Collins', airfare to Las Vegas with no union business purpose listed. *See* DFTS066583.

104.   CRC paid for friend Tracy Mauk's airfare to Las Vegas at a cost of $553.60. See DFTS066581.

105.   CRC paid for spouse Jann Roche's airfare to Las Vegas at a cost of $553.60. See DFTS066581.

106.   CRC paid for spouse Tamera Swyers' airfare to Las Vegas at a cost of $553.60. See DFTS066581.

*See* **Exhibit 51.**

107.   CRC paid for spouse Nancy Nelson's airfare to Toronto at a cost of $808.88. See DFTS049882.

108.   CRC paid for spouse Timothy Laramie's airfare to Boston at a cost of $455.80. *See* DFTS049884.

109.   CRC paid for spouse Denise Thuston's airfare to Boston at a cost of $455.80. See DFTS049884.

110.   CRC paid for spouse Patti Joyce's airfare to Boston at a cost of $343.80. See DFTS049884.

111.   CRC paid for Albert Bond's airfare to Boston at a cost of $963.80 where Bond was on the same flight as other CRC Business Agents and spouses whose flights cost the CRC $455.80. *See* DFTS049884.

*See* **Exhibit 52.**

112.   CRC paid for spouse Nancy Nelson's airfare and baggage to Las Vegas at a cost of $600.20. *See* DFTS060852

113.   CRC paid for spouse Nancy Nelson's airfare and baggage to Las Vegas at a cost of $491.20. *See* DFTS060854

114.   CRC paid $1,114.00 for Executive Secretary Treasurer Terrence Nelson's airfare to Las Vegas, including the upgrade to Business Select, when regular airfare on the same flight cost $575.20. *See* DFTS060852, DFTS060870 - DFTS060871, DFTS060864 - DFTS060865. This would also increase Executive Secretary Treasurer Terrence Nelson's "SW Points" earned from 3,053 to 12,122, a net gain of 9069 "SW Points." *See* DFTS060852, DFTS060870 - DFTS060871, DFTS060864 - DFTS060865.

115.   CRC paid $1,114.00 for Assistant Executive Secretary Treasurer Albert Bond's airfare to Las Vegas, including the upgrade to Business Select, when regular airfare on the same flight cost $575.20. See DFTS060852 - DFTS060854, DFTS060875 -

DFTS060876, DFTS060864 - DFTS060865.  This would also increase Assistant Executive Secretary Treasurer Albert Bond's "SW Points" earned from 3,053 to 12,122, a net gain of 9069 "SW Points."  *See* DFTS060852 - DFTS060854, DFTS060875 - DFTS060876, DFTS060864 - DFTS060865.

*See* **Exhibit 53.**

116.    CRC paid for $2,111.30 in cash advances on a CRC credit card with no names on the receipt, no itemized receipt, and no union business purpose listed.  *See* DFTS099606 - DFTS099607.

117.    CRC paid $600.36 on a CRC credit card at Bruno's American Grill for alcohol and food for a CRC office staff employee's retirement with no union business purpose listed.  *See* DFTS099606 - DFTS099607.

*See* **Exhibit 54.**

118.    CRC paid $555.50 on a CRC credit card for CRC Assistant Controller Bauer to stay at the Waldorf Astoria hotel.  *See* DFTS100929.

119.    CRC paid $555.50 on a CRC credit card for CRC Comptroller Julie Laramie to stay at the Waldorf Astoria hotel.  *See* DFTS100929.

*See* **Exhibit 55.**

120.    CRC paid $1,415.24 on a CRC credit card for CRC Business Agent Roth to stay one night at the Lowes Madison Hotel.  *See* DFTS087427.

121.    CRC paid $1,153.03 on a CRC credit card for CRC Business Agent Roth to stay one night at The Liaison Capitol Hill.  *See* DFTS087427.

*See* **Exhibit 56.**

122.    CRC paid $1,139.00 to Bartolino's Osteria on a CRC credit card for food and drink with no names on receipts, no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS073881.

123.    CRC paid two $150.00 donations, for a total of $300.00, on a CRC credit card to "Donate to Dems."  *See* DFTS073881.

124.    CRC paid $540.06 to Jackstack BBQ on a CRC credit card for food and drink with no names on receipts, no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS073881.

125.    CRC paid $478.91 to Joe Joe's Catering on a CRC credit card with no itemized receipt, and no union purpose listed on the receipt.  *See* DFTS073881, DFTS073887 - DFTS073888.

*See* **Exhibit 57.**

126.    CRC paid $469.47 to Capital Plaza on a CRC credit card with no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS067978, DFTS067981 - DFTS067982.

11335249.1

127.  CRC paid $50.92 to the BBQ Shack on a CRC credit card with no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS067978, DFTS067983 - DFTS067984.

128.  CRC paid $16.98 to Ruby Tuesday, and $20.73 to Huhot, and $28.25 to Red Robin on a CRC credit card with no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS067978, DFTS067985 - DFTS067989.

129.  CRC paid $36.86 to El Patron Cocina on a CRC credit card with no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS067978, DFTS067999 - DFTS068000.

130.  CRC paid $57.48 to Park Place on a CRC credit card with no itemized receipts, and no union purpose listed on the receipts.  *See* DFTS067978, DFTS068003 - DFTS068004.

*See* **Exhibit 58.**

131.  CRC paid for spouse Barbara Anderson's airfare to Las Vegas at a cost of $437.60. See DFTS054193.

132.  CRC paid for spouse Patti Joyce's airfare to Las Vegas at a cost of $437.60.  *See* DFTS054193.

133.  CRC paid for spouse Jennifer Gavoli's airfare to Las Vegas at a cost of $437.60. See DFTS054193.

*See* **Exhibit 59.**

134.  CRC paid $889.68 on the CRC credit card for CRC Political Director to stay one night at the Mandarin Oriental hotel.  *See* DFTS054161.

*See* **Exhibit 60.**

135.  CRC paid $433.30 on the CRC credit card for spouse Mary Avila's airfare to Chicago.  *See* DFTS068754, DFTS068769.

136.  CRC paid $30.60 on the CRC credit card for "restaurant room charges" with no itemized receipts and no union business purpose listed on receipt.  *See* DFTS068754, DFTS068771 - DFTS068773.

*See* **Exhibit 61.**

137.  CRC paid $605.08 on the CRC credit card for food and drink at Zia's restaurant with no names on the receipt, no itemized receipt, and no union business purpose listed on the receipt.  *See* DFTS060833, DFTS060834.

*See* **Exhibit 62.**

138.  CRC paid $694.00 on Terrence Nelson's CRC credit card at Capital Grill, Jimmy's Café on the Park, and Chris' Pancakes with no names on receipts, no itemized receipts, and no union business purpose listed.  *See* DFTS053248.

*See* **Exhibit 63.**

139. CRC paid $537.60 for spouse Nancy Nelson's airfare to Las Vegas with no union business purpose listed. *See* DFTS098342.

*See* **Exhibit 64.**

140. CRC paid $462.00 for spouse Nancy Nelson's airfare to Las Vegas with no union business purpose listed. *See* DFTS092400.

141. CRC paid $2,125.89 on the CRC credit card to the Phoenix Park Hotel for CRC Business Agent Barger's expenses with no itemized receipts and no union business purpose listed. *See* DFTS092400.

142. CRC paid $1,638.26 on the CRC credit card to the Phoenix Park Hotel for CRC Business Agent Roth's expenses with no itemized receipts and no union business purpose listed. *See* DFTS092400.

*See* **Exhibit 65.**

143. CRC paid $400.00 on Terrence Nelson's CRC credit card to Capital Grill with no names on the receipt, no itemized receipts, and no union business purpose listed. *See* DFTS072762.

144. CRC paid $800.00 on Terrence Nelson's CRC credit card to McCormick Schmicks with no names, no itemized receipts, and no union business purpose listed. *See* DFTS072762.

145. CRC paid $152.40 on Terrence Nelson's CRC credit card to "LVH Box Office" in Nevada with no names, no itemized receipts, and no union business purpose listed. *See* DFTS072762.

*See* **Exhibit 66.**

146. CRC paid $808.88 for spouse Nancy Nelson's airfare to Toronto, Canada with no union business purpose listed. *See* DFTS069567.

*See* **Exhibit 67.**

147. CRC paid $80.00 on Terrence Nelson's CRC credit card for Terrence Nelson's spouse's (Nancy Nelson) and Kathryn Nelson's upgraded boarding passes on Southwest Airlines. *See* DFTS062982, DFTS062992 - DFTS062995.

148. CRC paid $130.00 on Terrence Nelson's CRC credit card to Ruth's Chris Steakhouse with no itemized receipts and no union business purpose listed. *See* DFTS062982, DFTS062985 - DFTS062986.

149. CRC paid $52.00 on Terrence Nelson's CRC credit card to Rio All American Bar & Grill with no itemized receipts and no union business purpose listed. *See* DFTS062982, DFTS062987.

150. CRC paid $69.00 on Terrence Nelson's CRC credit card to Society Café Encore with no itemized receipts and no union business purpose listed. *See* DFTS062982, DFTS062988.

11335249.1

151.    CRC paid $41.00 on Terrence Nelson's CRC credit card to Red Lobster with no itemized receipts and no union business purpose listed.  *See* DFTS062982, DFTS062989.

152.    CRC paid $21.34 on Terrence Nelson's CRC credit card to Cracker Barrel with no itemized receipts and no union business purpose listed.  *See* DFTS062982, DFTS062990.

153.    CRC paid $258.00 on Terrence Nelson's CRC credit card to "Tickets & Tours" in Nevada with no names on the receipt, no itemized receipts and no union business purpose listed. *See* DFTS062982, DFTS062996 - DFTS062999.

*See* **Exhibit 68.**

154.    CRC paid $1,249.14 on Terrence Nelson's CRC credit card to Wynn Las Vegas Hotel, and $256.30 was spent on tickets to Le Reve, a Las Vegas show, with no names on the receipts and no union business purpose listed.  *See* DFTS062536, DFTS062544 – DFTS062550.

*See* **Exhibit 69.**

155.    CRC paid $24.95 on Terrence Nelson's CRC credit card to "Traffic School Online" with no union business purpose listed. *See* DFTS058569.

*See* **Exhibit 70.**

156.    $355.00 was an approved CRC expense for taxis with no receipts; Mr. Nelson reimbursed himself with CRC funds with no receipts. *See* DFTS080909.

157.    $90.00 was an approved CRC expense for entertainment on an excursion boat; Mr. Nelson reimbursed himself with CRC funds for entertainment. *See* DFTS080909, DFTS080918 - DFTS080921.

158.    $70.00 was an approved CRC expense for dinners for 2 at the Chicago airport with no names and no union business purpose; Mr. Nelson reimbursed himself with CRC funds for dinners for 2 with no names or union business purpose. *See* DFTS080910 and DFTS080911.

*See* **Exhibit 71.**

159.    $549.35 was an approved CRC expense for a CRC accounting/clerical employee and a CRC office management employee to attend an Elton John "Show" in Las Vegas with no union business purpose listed. *See* DFTS066263 - DFTS066264.

*See* **Exhibit 72.**

160.    $959.28 was an approved CRC expense for a CRC office management employee and eleven unknown individuals to attend Tony and Tina's Wedding in Las Vegas with no union business purpose listed. *See* DFTS055710, DFTS055728 - DFTS055729.

*See* **Exhibit 73.**

161.   $631.40 was an approved CRC expense for CRC Business Agent Robert Vosburgh to fly his spouse to Las Vegas with no union business purpose listed on the receipts. *See* DFTS064647, DFTS064649 - DFTS064651.

162.   $36.73 was an approved CRC expense for CRC Business Agent Robert Vosburgh's spouse to order room service with no union business purpose listed on the receipts. *See* DFTS064652.

163.   $26.99 was an approved CRC expense for CRC Business Agent Robert Vosburgh's spouse to order room service with no union business purpose listed on the receipts. *See* DFTS064653.

164.   $65.28 was an approved CRC expense for CRC Business Agent Robert Vosburgh and his spouse to eat and drink in Fairview Heights, IL, with no union business purpose listed on the receipt. *See* DFTS064656.

165.   $46.87 was an approved CRC expense for CRC Business Agent Robert Vosburgh's spouse to order room service, including a 50% tip, with no union business purpose listed on the receipt. *See* DFTS064657.

166.   $50.00 was an approved CRC expense for CRC Business Agent Robert Vosburgh's spouse to order room service, including a 30% tip, with no union business purpose listed on the receipt. *See* DFTS064658.

167.   $40.51 was an approved CRC expense for CRC Business Agent Robert Vosburgh's spouse to order room service, coffee, with no union business purpose listed on the receipt. *See* DFTS064660.

168.   $266.47 was an approved CRC expense for CRC Business Agent Robert Vosburgh and his spouse to eat and drink alcohol in Las Vegas, with no union business purpose listed on the receipt. *See* DFTS064665.

*See* **Exhibit 74.**

169.   $839.20 was an approved CRC expense for alcohol, including shots and top-shelf liquor, for CRC employees. *See* DFTS014283 - DFTS014285.

*See* **Exhibit 75.**

170.   $203.70 was an approved CRC expense for a Terrence Nelson's spouse, Nancy Nelson, with no itemized receipt, no names on the receipt, and no union business purpose listed on the receipt. *See* DFTS051992.

171.   $980.00 was an authorized CRC expense for Terrence Nelson to ride in taxis from 4/20/2010 through 4/29/2010. *See* DFTS051984, DFTS051996.

172.   $232.00 was an approved CRC expense for a Terrence Nelson and Nancy Nelson to attend Viva Elvis in Las Vegas with no names on the receipt and no union business purpose listed on the receipt. *See* DFTS052042 - DFTS052045.

173.   $383.70 was an approved CRC expense for Nancy Nelson to fly to Las Vegas with no union business purpose listed on the receipt. *See* DFTS068718 – DFTS068722.

174.    $408.20 was an approved CRC expense for Nancy Nelson to fly to Las Vegas with no union business purpose listed on the receipt.  *See* DFTS015165 – DFTS015166.

*See* **Exhibit 76.**

175.    $618.92 was approved for purchases for lunches and dinners at Bartolino's in 2009 with no legitimate union business purpose listed.

*See* **Exhibit 77.**

176.    $3,707.37 was approved for purchases for lunches and dinners at Bartolino's in 2010, where the CRC had a "House Account," with no legitimate union business purpose listed.

*See* **Exhibit 78.**

177.    $1,468.65 was approved for purchases for lunches and dinners at Bartolino's in 2011, where the CRC had a "House Account," with no legitimate union business purpose listed.

*See* **Exhibit 79.**

178.    $1,496.17 was approved for purchases for lunches and dinners at Bartolino's in 2012, where the CRC had a "House Account," with no legitimate union business purpose listed.

*See* **Exhibit 80.**

179.    $942.79 was approved for purchases for lunches and dinners at Bartolino's in 2013, where the CRC had a "House Account," with no legitimate union business purpose listed.

*See* **Exhibit 81.**

180.    $715.36 was approved for purchases for lunches and dinners at Bartolino's in 2014, where the CRC had a "House Account," with no legitimate union business purpose listed.

*See* **Exhibit 82.**

181.    CRC paid for spouse Nancy Nelson's airfare to Las Vegas at a cost of $408.20.  *See* DFTS101510.

182.    CRC paid for spouse Troy McCrumb's airfare to Las Vegas at a cost of $139.60. *See* DFTS101513.

183.    CRC paid for spouse Alma Holzer's airfare to Las Vegas at a cost of $342.20.  See DFTS101513.

184.    CRC paid for spouse Dennis Collins' airfare to Las Vegas at a cost of $342.20.  See DFTS101514.

185.   $1,445.00 was an approved CRC expense for CRC Business Agents to play golf with no union business purpose listed.   *See* DFTS101512, DFTS101522 - DFTS101523.

186.   $1,609.42 was an approved CRC expense for CRC Executive Secretary Treasurer "Nelson" to spend one night in a hotel in Lake Tahoe, NV. *See* DFTS101512.

187.   $1,338.22 was an approved CRC expense for CRC Business Agent "Thuston" to spend one night in a hotel in Lake Tahoe, NV.  *See* DFTS101512.

188.   $1,338.22 was an approved CRC expense for CRC Business Agent "Schmid" to spend one night in a hotel in Lake Tahoe, NV.  *See* DFTS101512.

189.   $1,338.22 was an approved CRC expense for CRC Controller "Laramie" to spend one night is a hotel in Lake Tahoe, NV.  *See* DFTS101512.

190.   $1,338.22 was an approved CRC expense for CRC Business Agent "Heinsz" to spend one night is a hotel in Lake Tahoe, NV.  *See* DFTS101512.

*See* **Exhibit 83.**

191.   CRC paid for spouse Nancy Nelson's airfare to San Diego at a cost of $263.40.  *See* DFTS096908.

192.   CRC paid for spouse Christine Bond's airfare to San Diego at a cost of $263.40.  *See* DFTS096908.

193.   CRC paid for spouse Denise Thuston's airfare to San Diego at a cost of $263.40. *See* DFTS096908.

194.   CRC paid for friend Kelly Tungett's airfare to San Diego at a cost of $223.40.  See DFTS096908.

195.   CRC paid for spouse Karin Byrne's airfare to San Diego at a cost of $223.40.  See DFTS096908.

196.   CRC paid for spouse Tim Laramie's airfare to San Diego at a cost of $263.40.  *See* DFTS096910.

197.   $2,925.00 was an approved CRC expense for CRC Business Agents to use "PAYPAL" with no itemized receipt, no names on the receipt, and no union business purpose listed.  *See* See DFTS096906 - DFTS096909.

*See* **Exhibit 84.**

198.   CRC paid for friend Tracy Mauk's airfare to Washington D.C.  at a cost of $284.40.  *See* DFTS079068.

199.   CRC paid for spouse Carla Hildenbrandt's airfare to Washington D.C. at a cost of $284.40.  *See* DFTS079068.

200.   CRC paid for spouse Suzanne Butler's airfare to Washington D.C. at a cost of $284.40.  *See* DFTS079068.

201. CRC paid for spouse Patricia Markus' airfare to Washington D.C. at a cost of $284.40. *See* DFTS079068.

202. CRC paid for spouse Tamera Swyers' airfare to Washington D.C. at a cost of $284.40. *See* DFTS079070.

203. CRC paid for spouse Linda Williamson's airfare to Washington D.C. at a cost of $284.40. *See* DFTS079072.

204. CRC paid for friend Tracy Mauk's airfare to Washington D.C. at a cost of $284.40. *See* DFTS079068.

205. CRC paid for spouse Deborah Wallace's airfare to Washington D.C. at a cost of $259.40. *See* DFTS079072.

206. CRC paid for spouse Donna Byrne's airfare to Washington D.C. at a cost of $442.40. *See* DFTS079074.

207. CRC paid for friend Carol Murphy's airfare to Washington D.C. at a cost of $284.40. *See* DFTS079072.

*See* **Exhibit 85.**

208. CRC paid for spouse Nancy Nelson's airfare to Las Vegas at a cost of $373.80. *See* DFTS074755.

209. $1,053.63 was an approved CRC expense for CRC Executive Secretary Treasurer Nelson to stay in a hotel for one night. *See* DFTS074757.

210. $1,053.63 was an approved CRC expense for CRC Assistant Executive Secretary Treasurer Bond to stay in a hotel for one night. *See* DFTS074757.

211. $1,053.63 was an approved CRC expense for CRC Business Agent Holzer to stay in a hotel for one night. *See* DFTS074757.

212. CRC paid for spouse Nancy Nelson's airfare to Las Vegas at a cost of $779.80. *See* DFTS074761.

213. $567.50 was an approved CRC expense for CRC to buy American Airlines "Miles" for Terrence Nelson. *See* DFTS074775.

*See* **Exhibit 86.**

214. CRC paid for spouse Donna Byrne's airfare to Las Vegas at a cost of $355.20. *See* DFTS078289.

215. CRC paid for spouse Nancy Nelson's airfare to Reno-Tahoe at a cost of $436.40. *See* DFTS078291.

216. CRC paid for spouse Margie Heinsz' airfare to Reno-Tahoe at a cost of $436.40. See DFTS078291.

217.  $910.00 was an approved CRC expense for CRC to buy a "Busch Stadium Sky Box" with no legitimate union business purpose listed on receipt for EST Nelson. *See* DFTS078293, DFTS078318 - DFTS078319.

218.  $588.82 was an approved CRC expense for multiple meals with no names on the receipts and no union business purpose listed on the receipts. *See* DFTS078297 - DFTS078303.

*See* **Exhibit 87.**

219.  CRC paid $8,886.03 on the CRC credit card to the Paris Las Vegas Casino for CRC Business Agents to stay in Las Vegas with no itemized receipts and no union business purpose listed. *See* DFTS050424.

220.  CRC paid $1286.02 on the CRC credit card to Jackson's for a CRC retirement party with no itemized receipts and no union business purpose listed, and notification was made to CRC employee Vicky Andrews of the expense. *See* DFTS050424, DFTS050428 - DFTS050430.

*See* **Exhibit 88.**

221.  In March of 2013, CRC performed an audit of benefit payments made by Flooring Systems, Inc. ("FSI"), a signatory contractor employing members of Floor Layers Local #1310.

222.  The CRC audit uncovered $89,705.25 owed by FSI to multiple CRC funds, including the CRC Health and Welfare Fund, the CRC Pension Fund, the Floor Layers Joint Apprentice Program, the CRC Vacation Fund, the CRC Market Recovery Fund, and the Flooring Industry Advancement Fund. *See* DFTS061889.

223.  Based on an internal FSI audit, FSI disputed that it owed CRC $89,705.25, but FSI admitted owing CRC $33,601.94 for unreported labor. *See* DFTS061707.

224.  In February of 2013, FSI paid CRC $13,601.94 for unreported labor, leaving an unpaid balance of $20,108.23, after accounting for accrued interest. *See* DFTS061696.

225.  On March 5, 2013, CRC issued a check from the CRC Market Recovery Fund for $20,000.00. *See* DFTS061697.

226.  On March 12, 2013, CRC forwarded the checks from FSI and CRC to Commerce Bank with instructions to credit $33,601.94 to Flooring Systems (F1020) benefit payment account. *See* DFTS061695.

227.  The letter further instructed Commerce Bank to take the shortage of $108.23 out of the CRC Vacation Fund. *See* DFTS061695.

228.  CRC paid $20,108.23 of FSI's liability for unreported labor, and listed the March 5, 2013 payment of $20,000 as a Market Recovery Fund payment to FSI for job targeting on the 2013 LM-2 report. *See* 2012-2013 LM-2 Labor Organization Annual Report at page 34.

229. The FSI audit and the resolution of the FSI audit was never discussed in the March 7, 2013 "Minutes of Regular Meeting of Board of Trustees of Carpenters' Pension Trust Fund of St. Louis."  *See* DFTS021805.

*See* **Exhibit 89.**

230.   Mr. Gould provides the following for the Court's reference:

| | **Breach of Fiduciary Duty under 29 U.S.C. §501(a) and CRC expense reimbursement policy** | **Exhibit Numbers** |
|---|---|---|
| 1. | Flying family and friends to CRC conventions or conferences | 32, 33, 41, 43, 45, 46, 47, 48, 49, 55, 57, 60, 61, 63, 64, 70, 72, 79, 80, 81, 82, 83 |
| 2. | Expenses for family and friends at CRC conventions and conferences | 22, 26, 27, 28, 47, 57, 67, 70, 72 |
| 3. | Alcohol expenses at conventions and conferences | 21, 23, 28, 32, 34, 35, 36, 38, 42, |
| 4. | Non-business related lunches | 73, 74, 75, 76, 77, 78 |
| 5. | Concert tickets | 24, 39, 68 |
| 6. | Musicals | 62, 72 |
| 7. | Plays | 24, 65 |
| 8. | Comedy shows | 69 |
| 9. | Sporting Events | 32, 83 |
| 10. | Sightseeing Tours | 22, 23, 25 26, 27, 30, 31, 32, 33, 34, 64, 67 |
| 11. | Sea world/Zoo | 33, 34, 40, 41, |
| 12. | Souvenirs | 20, 33 |
| 13. | Gifts | 33 |
| 14. | Non-business related alcohol expenses | 44, 50, 71 |
| 15. | Birthday and retirement parties | 44, 50, 84 |
| 16. | Dinner / Lunch / Drinks reimbursed by CRC despite receipts missing the "5 Ws " | 23, 25, 26, 27, 29, 30, 31, 32, 34, 35, 36, 38, 39, 40, 41, 42, 53, 54, 58, 59, 62, 64, 83 |
| 17. | Other incidentals being paid for by CRC for Business Agents, Executive Board members, employees, and their families. | 20, 23, 24, 29, 35, 37, 48, 49, 50, 51, 52, 53, 56, 61, 66, 67, 72, 79, 80, 82, 84 |

53.   As the current EST of the CRC, Mr. Bond owed a fiduciary duty to the CRC to review all expense reports submitted by CRC Business Agents, CRC Executive Board Members, and CRC Employees, and to ensure CRC monies were spent according to 29 U.S.C. §501(a) and the CRC expense reimbursement policy.

11335249.1

54.     Like his predecessor Mr. Nelson, Mr. Bond breached, and continues to breach, his 29 U.S.C. §501(a) fiduciary duties to the CRC members by authorizing CRC Business Agents, CRC Executive Board Members, and CRC Employees to spend the CRC members' funds in violation of 29 U.S.C. §501(a) and CRC expense reimbursement policy.

55.     Mr. Bond also breached his fiduciary duties as the CRC's EST by failing to take remedial action following Mr. Gould's demand pursuant to § 501(b).

## CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTIES UNDER TO 29 U.S.C. 501(B) – DEFENDANT ALBERT BOND

56.     Mr. Gould incorporates by reference the allegations contained in Paragraphs 1 through 55 of his Verified Complaint as if fully set forth.

57.     As an officer, agent, and representative of the CRC, Mr. Bond occupies a position of trust in relation to the CRC and its members as a group.

58.     As an officer, agent, and representative of the CRC, Mr. Bond has fiduciary duties to:

      a.    Hold CRC money and property solely for the benefit of the CRC and its members;

      b.    Manage, invest, and expend CRC money and property in accordance with the CRC constitution and bylaws and any resolutions of the governing bodies adopted thereunder;

      c.    Account to the CRC for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the CRC.

59.     Mr. Bond breached his fiduciary duties to the CRC by:

      a.    Failing to hold CRC money and property solely for the benefit of the CRC and its members by personally misappropriating CRC funds for personal benefit.  Upon information and belief, Mr. Bond continues to breach his fiduciary duty to the CRC in his capacity as CRC Executive Secretary Treasurer by permitting CRC Business Agents, CRC Executive Board

Members, and CRC employees to misappropriate CRC funds for personal benefit;

b.   Failing to manage, invest, and expend CRC money and property in accordance with the CRC constitution and bylaws and any resolutions of the governing bodies adopted thereunder by personally spending CRC funds for personal benefit and in violation of the CRC expense reimbursement policies.  Upon information and belief, Mr. Bond continues to breach his fiduciary duty in his capacity as CRC Executive Secretary Treasurer, by permitting CRC Business Agents, CRC Executive Board Members, and CRC employees to misappropriate CRC funds for personal benefit and in violation of the CRC expense reimbursement policies; and

c.   Failing to account to the CRC for any personal profit received by Mr. Bond in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the CRC.  Upon information and belief, Mr. Bond continues to breach his fiduciary duty in his capacity as CRC Executive Secretary Treasurer, by permitting CRC Business Agents, CRC Executive Board Members, and CRC employees to fail to account for personal profit received as a result of the misappropriation of CRC funds.

60.   The CRC and its governing board, including Mr. Bond in his position as EST, refused and/or failed to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after Mr. Gould's request.

61.   As a direct and proximate cause of this refusal and/or failure, the CRC has incurred actual damages in the form of lost money and property.

62.   Mr. Gould brings Count I to recover damages or other appropriate relief for the benefit of the CRC.

WHEREFORE, upon verified application and for good cause shown, Plaintiff Jonathan Gould, on behalf of and for the benefit of the CRC, prays this Court enter judgment in favor of and for the benefit of the CRC, and against Defendant Albert Bond, for actual damages fairly and reasonably believed to exceed the sum of $100,000.00 exclusive of costs and interest, for reasonable attorneys' fees and costs and to compensate Mr. Gould for any expenses necessarily

paid or incurred with this litigation, an injunction prohibiting Mr. Bond from further wrongful acts, and for any such other and further relief, both at law and in equity, as this Court deems just and proper under the circumstances.

SANDBERG PHOENIX & von GONTARD P.C.

By:     */s/ Michael P. McGinley*
        Andrew R. Kasnetz, # 29863MO
        Michael P. McGinley, #63552MO
        Jacob O. Grimes, #70090MO
        101 W. Vandalia, Suite 300
        Edwardsville, IL  62025
        618-659-9861
        618-659-9862 (Fax)
        E-mail:  akasnetz@sandbergphoenix.com
                 mmcginley@sandbergphoenix.com
                 jgrimes@sandbergphoenix.com

        *Attorneys for the Plaintiff Jonathan Gould on behalf of St. Louis – Kansas City Carpenters' Regional Council*

11335249.1

## **VERIFICATION**

**STATE OF ILLINOIS**     )
                            )     **SS**
**COUNTY OF MADISON**   )

      Jonathan Gould, being first duly sworn on oath, states that he knows the contents of the foregoing Complaint and believes same to be true.

                                         _____
                                         Jonathan Gould

      Subscribed and sworn to before me, a notary public, on this 15th day of April _____ 2019.

CAMILLE MICHEL LANE
Official Seal
Notary Public - State of Illinois
My Commission Expires Nov 16, 2022

                                 Notary Public

11335249.1