IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| *JONATHAN GOULD, on behalf of ST.* *LOUIS – KANSAS CITY CARPENTERS'* *REGIONAL COUNCIL* | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  4:19-cv-925 |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *ALBERT BOND,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## VERIFIED APPLICATION FOR LEAVE TO FILE VERIFIED COMPLAINT UNDER 29 U.S.C. § 501 (b)

COMES NOW, Plaintiff Jonathan Gould ("Mr. Gould"), on behalf of the St. Louis-Kansas City Carpenters' Regional Council ("CRC"), and for his Verified Application for Leave to File Verified Complaint under 29 U.S.C. §501 (b) against Defendant Albert Bond ("Mr. Bond"), states:

### INTRODUCTION

Mr. Gould files this Verified Application, and seeks leave to file his Verified Complaint, under 29 U.S.C. § 501.  This statute essentially provides for the equivalent of a shareholder derivative action by a union member.  Mr. Gould is a member of CRC and seeks to bring this action in a representative capacity on behalf of and for the benefit of CRC.  Under § 501 (b), leave of court is required before a Complaint can be filed.  Mr. Gould has met the prerequisites to do so and has shown good cause.

As an officer of the CRC, Mr. Bond owed the CRC fiduciary duties under 29 U.S.C. § 501(a).  Mr. Bond violated his fiduciary duties by (1) personal misappropriation of CRC funds, (2) reviewing and approving various categories of fraudulent reimbursements for CRC members'

10914772.1

expenditures, and (3) failing to take remedial action for similar, systemic acts of misconduct perpetrated by multiple CRC officers and agents.  Mr. Bond's breaches fostered a culture wrought with fraudulent misappropriation and, as demonstrated herein, have cost the CRC hundreds of thousands—if not millions—of dollars in lost funds.

Mr. Gould became aware of the violations and reported his concerns to CRC representatives, including Mr. Bond, to no avail.  Mr. Gould's outspoken disapproval of certain CRC members' conduct ultimately led to his termination as a CRC business agent.  As a result, Mr. Gould filed a lawsuit in Missouri state court, alleging wrongful termination, defamation, injurious falsehood, and intentional infliction of emotional distress.  Extensive discovery confirmed the fraudulent misappropriation and breaches of fiduciary duties.

Under 29 U.S.C. § 501(b), Mr. Gould repeatedly demanded Mr. Bond secure an accounting and recover damages on behalf of the CRC.  After months of delay and a sham accounting, the CRC recouped only $539.00.  Further demand by Mr. Gould is futile. Thus, for the detailed reasons discussed below, and as set forth in the Verified Complaint, good cause exists to file this lawsuit and for Mr. Gould to recover damages for the benefit of the CRC.

## LEGAL STANDARD

Section 501(a) prescribes fiduciary duties union officers, agents, shop stewards, and other representatives owe their unions.  Section 501(b) empowers union members to sue to recover damages incurred as a result of 501(a) violations where two conditions are satisfied: (1) the union or its governing board or officers refuses or fails to sue or recover damages or secure an accounting within a reasonable time following a union member's request; and (2) the union member obtains leave of court upon verified application and for good cause shown.  Section 501(b); *see also Local 314 Nat. Post Office Mail Handlers v. National Post Office Mail Handlers*, 572 F.Supp. 133, 138 (E.D. Mo. 1983).

"The standard for determining whether the [good cause] requirement is met is whether plaintiff shows a reasonable likelihood of success and, with regard to any material facts he alleges, he has a reasonable ground for belief in their existence." *Id.* at 139 (internal quotation omitted).

## ARGUMENT

Mr. Gould has satisfied both 29 U.S.C. § 501(b) prerequisites: (1) he demanded Mr. Bond sue to recover damages or secure an accounting on behalf of the CRC; and (2) good cause exists for bringing this lawsuit.

### A.    Mr. Gould demanded Mr. Bond secure an accounting or recover damages, to no avail.

#### 1.    Facts Surrounding Demand and its Futility

On January 12, 2018, Mr. Gould made a formal demand on Mr. Bond to secure an accounting or recover damages pursuant to 29 USC § 501(b). *See* Verified Complaint, ¶ 24, **Exhibit 8**.  Mr. Bond indicated the CRC would investigate the allegations.  *See* Verified Complaint, ¶ 25, **Exhibit 9**.  Mr. Bond indicated Calibre CPA Group, which was paid more than $330,000 by the CRC from 2012 to 2016, would perform an accounting. To further Calibre's "impartial" accounting, Mr. Gould requested to share documents obtained from the CRC through extensive discovery obtained in the underlying state court lawsuit. *See* Verified Complaint, ¶ 26, **Exhibit 10**.  In response, the CRC hired an attorney, Mr. Clash-Drexler of Bredhoff & Kaiser in Washington, D.C., to correspond with Mr. Gould regarding his demand.  In so doing, Mr. Clash-Drexler denied Mr. Gould access to Calibre and indicated any documents would be forwarded to Calibre through Mr. Clash-Drexler. *See* Verified Complaint, ¶ 27, **Exhibit 11**.

On April 19, 2018, Mr. Gould agreed to provide approximately eighteen thousand documents to Mr. Clash-Drexler in furtherance of Calibre's accounting.  *See* Verified Complaint,

10914772.1

¶ 29, **Exhibit 13**.  On May 3, 2018, Mr. Gould was informed the documents were withheld from Calibre, and Mr. Gould was given seven days to identify specific documents showing fraudulent misrepresentation of funds.  *See* Verified Complaint, ¶ 30, **Exhibit 14**.  Mr. Gould complied with this request, but Mr. Clash-Drexler continued to withhold the documents from Calibre.  *See* Verified Complaint, ¶ 31-32, **Exhibits 15–16**.

On June 25, 2018, Mr. Gould again attempted to provide Mr. Clash-Drexler with approximately 800 documents for Calibre's review.  *See* Verified Complaint, ¶ 33, **Exhibit 17**.  However, on August 16, 2018, Mr. Clash-Drexler admitted he never forwarded the documents to Calibre for review.  *See* Verified Complaint, ¶ 34, **Exhibit 18**.

Further, CRC, through Calibre, conducted a sham review refusing to examine the incriminating documents provided by Mr. Gould.  Nevertheless, Calibre admitted that it found violations of 29 U.S.C. § 501 but only in the amount of $539.00.  The "Special Review," intentionally limited in scope and clearly insufficient, unequivocally shows that any further demand would be futile.  *See* Verified Complaint, ¶ 35 – 38, **Exhibit 20**.

### 2.      Futility of Further Demand on the Union

Any further demand would be "an exercise in futility" and is not required.  *See, e.g., Sabolsky v. Budzanoski*, 457 F.2d 1245, 1252–53 (3d Cir. 1972); *McNamara v. Johnston*, 522 F.2d 1157, 1162–63 (7th Cir. 1975); *O'Rourke v. Crosley*, 847 F.Supp. 1208, 1219 (D. N.J. 1994) ("futility may serve as an exception to the 'request' requirement" under Section 501(b)).

In *O'Rourke v. Crosley*, the United States District Court for the District of New Jersey found the plaintiff-union member was entitled to prove his Section 501(b) demand was futile where he allegedly complained to the defendant-union business manager and was ignored. *Crosley*, 847 F.Supp. 1208, 1219 (D. N.J. 1994).

10914772.1

In *Saunders v. Hankerson*, the United States District Court for the District of Columbia held the plaintiff-union member was entitled to an inference the union officers would be biased with respect to any Section 501(b) demand they take action against themselves, where Plaintiff made particularized allegations of wrongdoing by a number of defendant-union directors and alleged acquiescence on the part of other directors. *Hankerson*, 312 F.Supp.2d 46, 68 (D. D.C. 2004). The *Hankerson* court applied the traditional Federal Rule of Civil Procedure for derivative actions found in Rule 23.1, which requires the complaint to be verified and state with particularity "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." *Id.* at 67–68.

In *McNamara v. Johnston*, the Seventh Circuit Court of Appeals held the plaintiff-union members had no obligation to make a Section 501(b) demand where the defendant-union officers had "consistently and vigorously argued [they] were acting at all times in compliance with the union's constitution and duly adopted resolutions, and it [was] apparent that any demand upon the [union officers] for relief would have been futile." *Johnston*, 522 F.2d 1157, 1162–63 (7th Cir. 1975). The *Johnston* court recognized the similarities between an action under 29 USC § 501 and a shareholder's derivative suit and noted that the demand requirement is excused when futile in these cases. *Id.* at 1162.

Like *McNamara*, the Eighth Circuit Court of Appeals has recognized similarities between 501(b) claims and shareholder derivative actions. *Local 314 Nat. Post Office Mail Handlers*, 572 F.Supp. at 138. Further demand is futile, and Mr. Gould has therefore satisfied Section 501(b)'s first prong necessary to bring suit against Defendant on behalf of the CRC.

**B.**     **Mr. Gould's allegations give rise to a "reasonable likelihood of success" and satisfy Section 501(b)'s good cause requirement.**

"The standard for determining whether the [good cause] requirement is met is whether plaintiff shows 'a reasonable likelihood of success and, with regard to any material facts he alleges, [he has] a reasonable ground for belief in their existence.'" *Local 314 Nat. Post Office Mail Handlers*, 572 F.Supp. at 139.   Thus, Mr. Gould must show a reasonable likelihood of success on any of his claims that Defendant breached his fiduciary duties in 29 USC § 501(a). These fiduciary duties include (1) holding money and property solely for the benefit of the union and its members and to manage, invest, and expend the same in accordance with the union's constitution and bylaws; (2) refraining from dealing with the union as an adverse party or on behalf of an adverse party in any matter concerned with the officer's union duties and from holding or acquiring any pecuniary interest which conflicts with the interests of the union; and (3) accounting to the organization for any profit received by the officer in whatever capacity in connection with transactions conducted by the officer or under his direction on behalf of the organization. *See* Section 501(a).

In *Loretangeli v. Critelli*, the Third Circuit Court of Appeals reversed the district court's dismissal of a plaintiff-union members' Section 501(b) claims, finding the members met the good cause standard. *Critelli*, 853 F.2d 186 (3d Cir. 1988).   The plaintiffs alleged the defendant-officers made rebates to certain local unions despite a union constitution provision prohibiting that activity. *Id.* at 192.   The *Critelli* court also held that differences in interpretation of what activity the union's constitution authorized should not be considered at the good cause stage of the proceedings. *Id.*

In *George v. Local Union No. 639*, the D.C. Circuit Court of Appeals reversed the district court's ruling and held the plaintiff-union member's claim that officers breached their fiduciary

10914772.1

duty by paying "supplemental strike benefits," satisfied the good cause standard. *George*, 98 F.3d 1419 (D.C. Cir. 1996). The court held the district court improperly required the union member to demonstrate "a high probability that his allegations are true." *Id.* at 1420. The *George* court found "it would make little sense to require plaintiff to show a high likelihood of success on the merits." *Id.*

In *Cowger v. Rohrbach*, the Ninth Circuit Court of Appeals reversed the district court and found the plaintiff-union member established good cause by alleging the defendant-union official misappropriated union funds for his personal benefit, despite arguing his use of the funds was authorized. *Cowger*, 868 F.2d 1064, 1068 (9th Cir. 1989). The *Rohrbach* court held authorization was <u>not</u> a complete defense to a Section 501 claim for breach of fiduciary duty. *Id.* As the plaintiff set forth facts showing misappropriation of union funds by the official for his personal benefit, "this [was] sufficient to satisfy the threshold 'good cause' requirement of section 501(b)." *Id.*

Mr. Gould has attached evidence demonstrating Mr. Bond breached his fiduciary duties owed to the CRC. In light of the foregoing and based upon the facts stated herein and in the Verified Complaint, Mr. Gould's allegations against Mr. Bond more than satisfy Section 501(b)'s good cause standard.

### 1.    Underlying Facts Establishing Good Cause against Mr. Bond

As the CRC's Executive Secretary Treasurer ("EST"), Mr. Bond owed fiduciary duties to the CRC to refrain from personally misappropriating CRC monies. He also owed fiduciary duties to review all expense reports submitted by CRC business agents and other employees. Finally, Mr. Bond owed the CRC a fiduciary duty to take action to remediate acts of misappropriation conducted by other executive members and business agents. Mr. Bond breached his Section 501(a) fiduciary duties by authorizing and failing to take action against

10914772.1

fraudulent misappropriation of CRC funds. Specifically, Mr. Gould alleges, with particularity, numerous fiduciary breaches, including improper CRC reimbursement to its members for:

      a.      flying family and friends to CRC conventions or conferences;

      b.      expenses for family and friends at CRC conventions or conferences;

      c.      alcohol expenses at conventions and conferences;

      d.      CRC vehicle policy;

      e.      CRC "training seminars;"

      f.      CRC "per diem;"

      g.      non-business related lunches;

      h.      concert tickets;

      i.      musicals;

      j.      plays;

      k.      comedy shows;

      l.      sporting events;

      m.      sightseeing tours;

      n.      sea world/zoo;

      o.      souvenirs;

      p.      gifts;

      q.      loans in excess of $2000.00 to CRC employees;

      r.      non-business related alcohol expenses;

      s.      reimbursement of medical insurance deductibles;

      t.      country club membership;

      u.      birthday and retirement parties;

      v.      vehicle insurance deductibles for accidents;

w.      Dinner / Lunch / Drinks reimbursed by CRC despite receipts missing:  1)

who the transaction was with; 2) what the transaction was for; 3) when the

transaction occurred; 4) where the transaction occurred; and 5) why the

transaction occurred ("5 Ws"); and

x.      other incidentals being paid for by the CRC for CRC Business Agents,

CRC   Employees, CRC Executive Board Members, and their families.

*See* **Verified Complaint**, ¶¶ 47-55 and **Exhibits 24-89** attached thereto.

These violations have fostered and ignored a culture of misappropriation spearheaded by

Mr. Bond's complicity and failure to act.  As a result, Mr. Gould has demonstrated a reasonable

likelihood of success and, therefore, satisfies Section 501(b)'s good cause requirement.

## CONCLUSION

For the reasons described herein, Mr. Gould has satisfied Section 501(b)'s demand and

good cause requirements and, therefore, respectfully requests this Court grant leave to file his

Verified Complaint.

SANDBERG PHOENIX & von GONTARD P.C.


By:      */s/Michael P. McGinley*
         Andrew R. Kasnetz, # 29863
         Michael P. McGinley, #63552
         Jacob O. Grimes, #70090
         120 S. Central Ave., 1600
         Clayton, MO 63105
         314-231-3332
         314-241-7604 (Fax)
         E-mail:  akasnetz@sandbergphoenix.com
                  mmcginley@sandbergphoenix.com
                  jgrimes@sandbergphoenix.com

         *Attorneys for the Plaintiff Jonathan Gould on behalf*
         *of St. Louis – Kansas City Carpenters' Regional*
         *Council*

## VERIFICATION

STATE OF ILLINOIS    )
                          )      SS
COUNTY OF MADISON   )

     Jonathan Gould, being first duly sworn on oath, states that he knows the contents of the foregoing Application and believes same to be true.

_____
Jonathan Gould

Subscribed and sworn to before me, a notary public, on this 15th day of
April _____ 2019.

CAMILLE MICHEL LANE
Official Seal
Notary Public - State of Illinois
My Commission Expires Nov 16, 2022

Notary Public

11378904.1